

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Wham-O Holding, Ltd. and INTERSPORT CORP. d/b/a WHAM-O LLC, | Case No.: 21-cv-01641 |
| Plaintiffs, | Judge: Franklin U. Valderrama |
| v. | Magistrate Judge: Sheila M. Finnegan |
| THE PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

## MOTION PURSUANT TO RULE 60(b) OF
## THE FEDERAL RULES OF CIVIL PROCEDURE

Defendant Huang Tao (d/b/a Ovnshery on Amazon.com) ("Defendant" or the "Store")

respectfully submits this Motion Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure

(the "Rule 60 Motion"). In support of this Rule 60 Motion, Defendant respectfully submits a

Memorandum of Law and the Declaration of Huang Tao (the "Tao Dec.") with attached Exhibit

A. With this Rule 60 Motion, Defendant also respectfully submits a Motion to Strike certain

allegations in Plaintiffs' Complaint (the "Motion to Strike"). Should this Court grant Defendant's

Rule 60 Motion and/or the Motion to Strike, Defendant respectfully requests 14 days from the

date of the Court's order or the filing of an amended complaint, whichever is later, to answer

and/or otherwise respond to whatever allegations remain in the Complaint.[1]

---

[1] In making the Rule 60 Motion and the Motion to Strike, Defendant does not intend to waive defenses pursuant to Rule 12(b), including the defense of lack of personal jurisdiction. As set forth in the Tao Dec., the Store satisfies none of the traditional criteria for personal jurisdiction, such as employees or offices in this District. (Tao Dec. at ¶ 2.) The general interactivity of a website operated by Defendant is not always sufficient for personal jurisdiction either, as Judge Blakely determined in the case cited by this Court in its Default Judgment Order, *Am. Bridal & Prom Indus. Ass'n v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, 192 F. Supp. 3d 924 (N.D. Ill. 2016). Defendant reserves the right to address personal jurisdiction and/or additional Rule 12(b) defenses more fully in the event that this Court grants the Rule 60 Motion and directs the filing of an amended complaint.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## PURSUANT TO RULE 60(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Defendant respectfully submits this memorandum of law in support of its Motion Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (the "Motion"). With this Memorandum, Defendant submits the Declaration of Huang Tao.

## PRELIMINARY STATEMENT

Defendant is an independent online store operated from China, using the Amazon platform. One of Defendant's products is the iconic hula hoop. On the understanding that the hula hoop is a well-known, long-used phrase used generically to describe the common hoop used, *inter alia*, as a children's toy, Defendant used the term "Hula Hoop" to describe its hoop, which it also referred to as "hoola hoop." Unbeknownst to Defendant, Plaintiffs claimed a trademark over the phrase "Hula-Hoop," and Defendant suddenly discovered that it was being sued in a court in Illinois for trademark infringement. Not only was Defendant being accused of trademark infringement, Defendant was being accused of being part of a "massive counterfeiting operation."

Defendant is not part of any counterfeiting ring; it is not a counterfeiter at all. Instead, Defendant is an independent seller on Amazon that happens to sell "hoola hoops" as one of various products it sells. As discussed more fully below, Defendant—unfamiliar with the American legal system—was not able to respond to Plaintiffs' Complaint in a timely manner, but that delay was not a willful disregard for this Court. It was a product of excusable delay. Furthermore, Defendant has meritorious defenses that it respectfully submits are worthy of this Court's consideration. Among its defenses is Defendant's challenge to the enforceability and/or validity of the trademark at issue. Defendant respectfully requests that this Court should hear at least that defense, even though to do so requires vacating the Court's Default Judgment Order, because Plaintiffs have repeatedly asserted the purported "Hula-Hoop" trademark in this Court. Vacating the default judgment and allowing this case to proceed on the merits would allow this Court to assess the continued viability, if any, of the trademark that Plaintiffs have asserted repeatedly in this Court.

**ARGUMENT**

I.    THE FINAL JUDGMENT SHOULD BE SET ASIDE PURSUANT TO RULE 60(B)(1).

Defendant does not dispute that the time for it to appear and answer or otherwise respond to the Complaint has passed. What Defendant does dispute, however, is that this is a case in which the harsh sanction of a default judgment is warranted.

As an initial matter, this Court has the discretion to vacate the judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, which provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . ." *See also Delgado v. I.C. Sys., Inc.*, No. 17-cv-04918, 2020 WL 5253686, at *1 (N.D. Ill. Sept. 30, 2020) ("Above all, though, district courts are given 'considerable latitude' in deciding whether to vacate (or not) a default judgment."); *Strabala v. Zhang*, 318 F.R.D. 81, 89 (N.D. Ill. 2016) (granting motion to vacate default judgment because a "Court can still vacate [a default judgment] under general "good cause" principles . . . ."). Here, Defendant seeks relief pursuant to Rule 60(b)(1), which includes among the reasons for relieving a party of a judgment order "excusable neglect."

This Court has articulated a three-part standard for evaluating a request for relief pursuant to Rule 60(b)(1)— "the moving party must demonstrate: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Delgado*, 2020 WL 5253686, at *1. The inquiry is an equitable one, taking into account "the danger of prejudice to the [plaintiff], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Flexicorps v. Beck*, No. 02 C 8167, 2004 WL 2325829, at *2 (N.D. Ill. Oct. 12, 2004); *see also Op. Eng'rs Local 139 Health Benefit Fund v. Tracks Custom Crushing,* No. 09-C-44, 2009 WL 3754172, at *2 (E.D. Wis. Nov. 5, 2009) (citation omitted). While the burden on a Rule 60(b)(1) movant is a heavy one, *see, e.g., Smith v. Red Rock Prods., LLC*, No. 20-C-34, 2020 WL 5259058, at *1 (E.D. Wis. Sept. 3, 2020), it is met here, particularly

when this case is viewed in the context of the 7th Circuit preference for trial on the merits over judgment by default. *See Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 675-76 (7th Cir. 1987) (quoting *A.F. Dormeyer Company v. M.J. Sales & Distributing Co.*, 461 F.2d 40, 43 (7th Cir. 1972) (stating that "modern federal procedure favors trials on the merits, and default judgments should generally be set aside where the moving party acts with reasonable promptness, alleges a meritorious defense to the action, and where the default has not been willful").

For at least the following reasons, Defendant's failure to appear in this case earlier is excusable rather than willful and was remedied as soon as possible. Accordingly, the extreme sanction of a default judgment is unjust as to Defendant. *See, e.g.*, *W. Bend Mut. Ins. Co. v. Belmont State Corp.*, No. 09 C 354, 2010 WL 11712781, at *1 (N.D. Ill. Apr. 16, 2010) ("[A] default judgment should be used only in extreme situations, or when other less drastic sanctions have proven unavailing.") (citation omitted).

*First*, the quintessential party against whom default judgment is warranted is a party who consistently and flagrantly ignores a lawsuit and then rises up after judgment has been entered to complain. *See, e.g.*, *Simon v. Pay Tel Mgmt., Inc.*, v. 782 F. Supp. 1219, 1227-30 (N.D. Ill. 1991); *see also Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 877 (7th Cir. 1988) (vacating district court decision granting default judgment, determining that "[w]e believe that the judge did abuse her discretion here by entering the default judgment in the absence of any bad faith or willfulness without first employing any lesser sanction"). Defendant is not that quintessential party.

With the Summons in this case, Plaintiffs submitted a Declaration of Service, which indicates that the defendants were served by sending court filings to the e-mail addresses associated with the accounts on various marketplace platforms, including the Amazon platform used by Defendant. (Dkt. # 26-1.) As set forth in the Tao Dec., however, the e-mail address used to set up the Defendant's account on Amazon was not the most effective way for Defendant to receive

communications regarding the store; instead, Defendant for months had been relying on the Amazon Seller Central platform for communications relating to the store. (Tao Dec. at ¶¶ 5-6.) As a result, Defendant had not been using the e-mail address registered with Amazon for months. (*See id*. at ¶¶ 5, 7.) When Defendant was notified—through the Amazon Seller Central platform—that the listing for the product at issue had been removed and his Amazon account restrained, it was not immediately clear that this lawsuit was the cause of the problem, or that Defendant was required to appear in an American court case, because Defendant is a Chinese business owner with no experience with the United States or the American legal system. (*See id*. at ¶¶ 2, 6.) As attached to the Tao Declaration, the only notice Amazon provided to Defendant via Amazon Seller Central was a vague notice that a Federal court somewhere in the United States had issued a temporary restraining order restraining Defendant in light of undefined intellectual property claim. (Tao Dec. Ex. A (stating that "another party's copyright, patent, trademark, design right, database right, or other intellectual property or other proprietary right" is at issue).)

Assuming that Plaintiffs' Declaration of Service is accurate, Defendant was and has been unable to access any e-mail sent in late May serving Defendant with the court filings in this case. Nonetheless, Defendant has worked diligently to find U.S. counsel to consult and assist with this case. However, the law firms that tend to specialize in the representation of Chinese business in these types of cases encourage settlement rather than litigation. That was not a palatable course of action to Defendant given the meritorious defenses it has in this litigation. (*See* Tao Dec. at ¶ 7; *see generally* Motion to Strike.)

The sequence of events discussed above and outlined in the Tao Declaration support the relief requested in this Rule 60 Motion in at least the following respects.

*First*, it demonstrates that the delay here was not willful or deliberate. Defendant was not intentionally flouting the Court's deadlines or the deadlines pursuant to the Federal Rules of Civil Procedure. Defendant was legitimately unaware that there were deadlines to be met. (Tao Dec. at

¶ 6.) This is therefore not a case evincing such a pattern of willful disregard for this litigation that the harsh sanction of default is warranted. *See, e.g., Ellingsworth v. Chrysler*, 665 F.2d 180, 185 (7th Cir. 1981) (vacating district court's denial of Rule 60(b)(1) motion where record revealed "no willful pattern of disregard for the court's orders or rules and defendants were "burdened with a . . . judgment with no opportunity to present their defenses").

*Second*, it demonstrates that the last-resort of default judgment is not warranted here. Given that the initial failure of Defendant to respond in a timely fashion was excusable, default judgment is an unduly harsh sanction that should not be applied here. *See Smith*, 2020 WL 5259058, at *1 ("Default judgment is a 'weapon of last resort, appropriate only when a party willfully disregards pending litigation.'") (citation omitted); *see also Sun v. Bd. Of Trustees of the Univ. of Illinois*, 473 F.3d 799, 811 (7th Cir. 2007) (affirming district court's decision to vacate default judgment where "the district court likely realized when it vacated its entry of default, this case does not represent one of those rare situations in which entry of default is appropriate"); *Annie Oakley Enters., Inc. v. Edens Gardens Essentials*, No. 1:18-cv-2686-SED-DLP, 2019 WL 7578622, at *2 (S.D. Ind. Feb. 7, 2019) ("Generally, a default is upheld only when there is a 'willful failure' to answer a complaint.").

In sum, The default judgment should be vacated so that Defendant can have the opportunity to present the meritorious defenses discussed below.

II.     DEFENDANT'S MERITORIOUS DEFENSES DESERVE TO BE HEARD.

A.The Weakness of the Trademark at Issue Should Be Decided.

This case involves a trademark that was registered in 1962. The trademark purports to be for the phrase "Hula-Hoop." (Dkt. # 1-1.) In this District, Plaintiffs have filed at least one trademark infringement case asserting this trademark every year for at least the past three years—Case Nos. 18-5876, 19-4407 and 20-3761. In 2021, in addition to this case, Plaintiffs filed case no. 21-2530. All of those cases followed the same pattern as this case—Plaintiffs sued

large numbers of foreign defendants, moved *ex parte* to restrain them in the hope that most if

not all defendants would settle, then moved for a preliminary injunction and lastly moved for a

default judgment in an effort to force any remaining defendants to settle. Case Nos. 18-5876,

19-4407 and 20-3761 were all decided by default.

Before courts in this District are tied up yet again with additional litigation over this

"Hula-Hoop" trademark, Defendant would like to opportunity to raise a foundational issue: Is a

trademark purportedly covering the phrase "Hula-Hoop," registered in the 1960s, still worthy of

trademark protection approximately 60 years later, well into the 21st century? Accordingly,

Defendant makes the instant Motion.

Specifically, one meritorious defense that Defendant would like the opportunity to present

is genericness of the "Hula-Hoop" trademark. "The law classifies trademarks into five categories

of increasing distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful." *Hickory*

*Farms, Inc. v. Snackmasters, Inc.*, 500 F. Supp. 2d 789, 792 (N.D. Ill. 2007) (citing *Two Pesos,*

*Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992); *Packman v. Chicago Tribune Co.*, 267

F.3d 628, 638 (7th Cir.2001)). At the bottom of the hierarchy is the generic mark, which is entitled

to no trademark protection. *Hickory Farms*, 500 F. Supp. 2d at 793 (determining that terms "beef

stick" and "turkey stick" were generic).

Genericness is—at its core—a commonsense concept. As the Seventh Circuit explained

in evaluating whether "yo-yo" was entitled to trademark protection, "[a] court is not obligated to

close its eyes and refuse to see or its mind and refuse to recognize that which is obvious to the

public in general." *Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.*, 343 F.2d 655, 668 (7th Cir.

1965). Recognizing what was obvious, the Seventh Circuit in *Duncan* reversed the District

Court's ruling on behalf of the plaintiff trademark holder. The Seventh Circuit in *Duncan*

determined that, regardless of whether the trademark for "yo-yo" had been correctly registered in

1930, it had become, "by reason of the general acceptance by the public," a generic term used to describe the toy. *Id.* at 659.

A term or phrase is generic if it is "commonly used to name or designate a kind of goods." *Mil-Shar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1157 (7th Cir. 1996) (reversing District Court's grant of preliminary injunction in connection with claim of patent infringement where trademarked phrase "Warehouse Shoes" was generic). While a trademark identifies the source of a product, a generic term describes only "the type, or genus, of thing into which common linguistic usage consigns that product." *Id.* (citation omitted); *see also Keegan v. Apple Computer, Inc.*, No. 95 C 1339, 1996 WL 667808, at *5 (N.D. Ill. Nov. 15, 1996) ("A generic term cannot become a valid trademark because 'the first user cannot deprive manufacturers of the product of the right *to call an article by its name*.'") (emphasis added) (citation omitted).

Even without the benefit of any discovery, there are several common-sense factors that cast significant doubt on the enforceability of a "Hula-Hoop" trademark, making the genericness of the purported mark at issue a meritorious defense warranting vacation of this Court's Default Judgment Order. (Dkt. # 55.) *First*, "[s]ignificant use of a term by competitors in the industry has traditionally been recognized, along with dictionary evidence, as indicating genericness." *Mil-Shar*, 75 F.3d at 1159. Here, the sheer number of defendants Plaintiffs have been suing in multiple cases is a strong indication that, despite Plaintiffs' efforts, "hula hoop" has become a generic word for the product itself. (*See also* Tao Dec. at ¶ 3 ("I am just not aware of any other way to describe or call a hula hoop.").)

*Second*, simple internet searches reinforce the genericness of the word or phrase "hula hoop." *See Keegan*, 1996 WL 667808, at *6 ("A common source of evidence on genericness is the dictionary."). Wikipedia.com describes hula hoops as "a toy hoop that is twirled around the waist, limbs or neck. They have been used by children and adults since at least 500 BC." *See* https://en.wikipedia.org/wiki/Hula_hoop (last visited July 25, 2021). The website

vocabulary.com defines hula hoop as a "plaything consisting of a tubular plastic hoop for swinging around the hips." *See* https://www.vocabulary.com/dictionary/hula-hoop (last visited July 25, 2021). While the Merriam-Webster online definition of "hula-hoop" does refer to a trademark, *see* https://www.merriam-webster.com/dictionary/Hula-Hoop (last visited July 25, 2021) (defining "hula-hoop" as "used for a plastic toy hoop that is twirled around the body"), that simply begs the question Defendant is respectfully requesting that this Court take up—does "hula hoop" deserve continued trademark protection? *See Hickory Farms,* 500 F. Supp. 2d at 794 ("Terms become generic not because manufacturers lack creativeness in naming their products, but because no other words have emerged as synonyms for certain types of goods . . . ."); *see also Mil-Shar*, 75 F.3d at 1162 ("Allowing a generic term to have trademark protection would overstep the purposes of trademark law and violate fundamental concepts of fair competition. . . . [A company] cannot appropriate the English language, and by doing so render a competitor inarticulate.") (citation omitted).

This Court need not, at this juncture, decide the issue of genericness of the "Hula-Hoop" trademark. This Court need only decide that the genericness of the phrase "Hula-Hoop" is a meritorious defense that warrants vacation of the default judgment so that the parties may present arguments and evidence on the issue. The issue of whether "Hula-Hoop" has become, in the decades since the phrase was registered, the "exclusive descriptor of the product" and thereby its genericness is an issue worthy of this Court's consideration. *See, e.g.*, *Timelines, Inc. v. Facebook, Inc.*, 938 F. Supp. 2d 781, 791 (N.D. Ill. 2013) (evaluating the word "Timelines" for genericness but determining that fact issues made the issue proper for a jury to decide). As discussed above, Plaintiffs have brought cases claiming infringement of the phrase "Hula-Hoop" regularly in at least the past three years. Reaching the merits on the genericness of the "Hula-Hoop" phrase would have the beneficial effect of establishing a clear precedent in this District. *See, e.g.*, *G. Heileman*

*Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 1001 (7th Cir. 1989) (affirming decision of district court that trademark at issue was "merely descriptive" and not protectible).

      B.      The Propriety of Joining Over 200 Unrelated Defendants Should Be Determined.

As this Court has previously recognized, large groups of disparate defendants cannot be stuffed into one lawsuit as "infringers" and "counterfeiters" solely for the convenience of a plaintiff. *See Estee Lauder Cosmetics Ltd. v. P'ships & Unincorporated Assocs. Identified on Schedule A*, 334 F.R.D. 182, 187 (N.D. Ill. 2020) (considering *sua sponte* the joinder of dozens of defendants and determining that joinder was improper because "time and again the courts of this District have held that it is not enough for a plaintiff to simply allege that multiple defendants have infringed the same patent or trademark"). This case provides an excellent example of a plaintiff taking permissive joinder under Rule 20 of the Federal Rules too far. *See id.* at 185 (stating that it is plaintiff's burden to demonstrate that joinder was proper). Plaintiffs' own filings show how different the defendants in this case actually are and why joinder here is improper.

One of the central claims in the Complaint is that "defendants" price allegedly infringing or counterfeit hula hoops at "substantially" lower prices. (Compl. at ¶¶ 5-6.) Plaintiffs then provide a screenshot of a webpage offering a hula hoop for $3.19. (Compl. at ¶ 5.) However, Defendant's store offers its hula hoops at $22.99. Similarly, screenshots for other defendants clearly show hula hoops being sold at a wide-range of prices, from $25 to $35.98 to $41 to $54.79, all significantly higher than the $3.19 price referenced in the Complaint. (*See, e.g.*, Dkt. 14-2.) Plaintiffs alleges that defendants are "able to offer the counterfeit products at a price substantially below the cost of original, while still being able to turn a profit . . . through a cooperative effort throughout the supply chain." Plaintiffs own filings, however, demonstrate that this overly broad claim does not apply across the board—certainly not to this particular Defendant. In other words, the impropriety of joinder is demonstrated by Plaintiffs themselves.

Another reason that Plaintiffs' joinder is too sweeping and improper is that the hula hoop products Plaintiffs claim are counterfeit and/or infringing are clearly being marketed to different

audiences. For example, Defendant's store clearly markets its hula hoop products to children as a toy. In contrast, other defendants' hula hoops are marketed to adults as exercise equipment. (Dkt. # 14-2 at 188 (showing "adult" hula hoop for "weight loss").) The fact that Plaintiffs' own filings show the products at issue being marketed to different audiences further shows how improper joinder is here because a key inquiry in the likelihood of confusion analysis central to trademark infringement is whether the products at issue are targeted at the same audiences. *See Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 860 (N.D. Ill. 2018). Here, the products are not targeted at the same general audiences, making the case substantially more cumbersome rather than efficient and thereby making the joinder of over 200 defendants improper. *See Thermapure, Inc. v. Temp-Air, Inc.*, No. 10–cv–4724, 2010 WL 5419090, at *5 (N.D. Ill. Dec. 22, 2010) (stating that "judicial economy" is one of the objectives of Rule 20).

Finally, Plaintiffs' joinder is plainly overly broad given that defendants market their hula hoops in different ways. According to the Complaint, the 200+ "Defendants" have generally "sold, offered to sell, marketed, distributed, and advertised . . . products in connection with the HULA HOOP Trademark without Plaintiffs' permission." (Compl. at ¶ 34.) Plaintiffs' filings, however, make clear that there too many differences in the method of selling or marketing the accused products to make joinder appropriate. Plaintiffs refer to a dozen different platforms and websites allegedly used by "Defendants." (Compl. at ¶ 20.) In addition, while Defendant markets its product as "Hoola Hoops," other defendants market their products as a "Hu La Hoop" (Dkt. # 14-2 at 24), as a "Fitness Sport Hoop" (Dkt. # 14-2 at 50), or as a "Hula Hoop" (Dkt. # 14-2 at 213). Assuming that Plaintiffs' purported "Hula-Hoop" trademark is protectible and not generic, an infringement claim against a defendant that markets its hula hoops as a "Hula Hoop" is different than a claim against Defendant that markets its hula hoops as "Hoola Hoops,"[3] or a defendant that markets its hula hoops as a "Fitness Sport Hoop."

---

[3] As set forth in the Tao Dec., the single reference to "Hula Hoop" on its Amazon storefront was not meant to refer to a particular brand but was instead merely descriptive. (Tao Dec. at ¶ 3.)

In a case almost identical to this one, this Court *sua sponte* reviewed the propriety of the joinder of 79 defendants who had been sued by plaintiffs for improperly appropriating a trademark on various online stores. *Estee Lauder*, 334 F.R.D. at 184. This Court recognized that the large number of defendants, which was only about one-third the number of defendants in this case, would require "enormous time and effort to check the evidence—such as screenshots of dozens and dozens of defendants' online stores—amassed into a single case absent actual connections between the defendants." *See id.* at 186. The *Estee Lauder* plaintiffs, like Plaintiffs here, argued that "Defendants are 'an interrelated group of counterfeiters acting in active concert' who 'share unique identifiers, such as design elements, similarities of the price, description of the goods offered for sale, and of the Counterfeit MAC Products themselves offered for sale.'" *Compare id.* at 188, *with* Compl. at ¶ 20 ("Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell counterfeit products."); ¶ 7 ("The Defendant Aliases share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale . . . ."). This Court recognized that the very accusations Plaintiffs here make were "conclusions—not facts," and there was insufficient similarity as to the moving defendants to make joinder proper. *Estee Lauder*, 334 F.R.D. at 188. Ultimately, this Court determined that joinder was improper and directed the *Estee Lauder* plaintiffs to file an amended complaint "accompanied by a memorandum explaining specifically why each Defendant is properly joined to all of the others." *Id.* at 190. This Court's decision in *Estee Lauder* demonstrates that the propriety of joinder is indeed a meritorious defense.

In sum, the Complaint repeatedly accuses "Defendants" generally of being counterfeiters and then blithely attributes to the "Defendants" in this case characteristics that purportedly apply to "counterfeiters" generally. As set forth more fully in Defendant's accompanying Motion to Strike, the allegations about "counterfeiters" generally are of no moment; what Plaintiffs have to show is that this Defendant and co-defendants specifically are counterfeiters. Without that, Plaintiffs cannot simply impute to Defendant and co-defendants specifically the characteristics of

counterfeiters generally and thereby group these Defendants together. Nothing in the Complaint explains why this Defendant should be lumped together with more than 200 other defendants with whom Defendant has no relationship. *See DirecTV, Inc. v. Perez*, No. 03-C-3504, 2003 WL 22682344, at *2 (N.D. Ill. Nov. 12, 2003) (dismissing complaint as to eight of nine defendants).

Lastly, Defendant respectfully requests the opportunity to dispute the amount of damages assessed against it, particularly the award of statutory damages. (Default Judgment Order at ¶ 3.) As testified to by the owner of the Store, there was no bad faith or intent at play here. (Tao Dec. at ¶ 3.) Accordingly, the Store should have the opportunity to present evidence demonstrating that the damages assessed against it are excessive. *See, e.g.*, *Luxottica Group S.P.A. v. Hao Li*, No. 16 CV 487 and No. 16 CV 1227, 2017 WL 621966, at *6 (N.D. Ill. Feb. 15, 2017) (considering mitigation efforts and lack of evidence showing that defendant was "a large-scale counterfeiter" or that plaintiff had suffered substantial harm in assessing damages).

## CONCLUSION

In light of the foregoing, Defendant respectfully requests that this Court grant its Motion and such other and further relief as this Court deems just and proper.

Respectfully submitted this 29th day of July 2021.

/s/*Huang Tao*
_____

Defendant

13

## DECLARATION OF HUANG TAO

I, Huang Tao, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct to the best of my knowledge, information and belief.

1.      I am a sole proprietor doing business as Ovnshery on Amazon.com, identified on Attachment "A" to the Complaint, and a Real Party in Interest in this action. I sell products of various brands and generally specialize in toys and crafts for children. One of those products is a hula hoop.

2.      I am a citizen and resident of China. I have never been to Illinois or the United States. I do not directly conduct any regular business with any person or any company located in Illinois, except to the extent that products ordered and shipped to Amazon for fulfillment by Amazon are ultimately shipped by Amazon to Illinois. I do not have a business relationship with any other company or online store. I have no offices or employees anywhere in the United States.

3.      At the start of February 2021, I began selling hoops called "Hoola Hoops" in four colors. My Amazon page uses the phrase "Hula Hoop" once but "Hoola Hoops" multiple times. The one reference to "Hula Hoop" is not hyphenated, and it is not meant to refer to a particular brand. "Hula Hoop" just describes the product. The one mention of "Hula Hoop" was not meant to confuse or trick anyone. I am just not aware of any other way to describe or call a hula hoop.

4.      I have an account on Amazon, and by the end of June 2021, that account contained approximately $3,400 (the "Operating Capital"). The Operating Capital is like a business bank account, containing revenues from sales of all products. The Operating Capital is used to pay operating expenses such as storage costs for products shipped to Amazon's warehouse.

5.      On May 5, 2021, in China, I was notified by Amazon that the listing for the Hoola Hoops (ASIN:B08XW3RHQG) had been removed. I received that notification through the Amazon Seller Central platform, and not the e-mail address that I registered with Amazon. Amazon Seller Central is a platform that connect merchants and brands directly with customers, and it is also how Amazon communicates with merchants to provide notifications about our stores and our products. Over time, I found that the best way to communicate with Amazon and customers is through Amazon Seller Central— not the e-mail address I registered with Amazon. That is why, over time, I checked that e-mail less and less frequently, relying on Amazon Seller Central instead for messages relating to the Store. Starting in about March 2021, my e-mail inbox was filled up, but I was using Amazon Seller Central almost exclusively so I did not notice.

6.      On May 5, 2021, I received from Amazon Seller Central a notice that the Operating Capital had also been placed on hold (the "Amazon Notice"). The Amazon Notice I received is attached as Exhibit A. English is not my first language, but from what I could tell from the Amazon Notice, it appeared that someone somewhere in the United States was raising some intellectual property infringement claim against the Store. Beyond that, I did not understand from the Amazon Notice that I was required to do anything in a U.S. court. I have no experience with the American legal system, so I was not aware that someone suing the Store in the United States meant that I would have to do something to appear in that case. Because the Hoola Hoops products were delisted from Amazon, I stopped selling them, so I thought that this was an issue to fix with Amazon, not in court.

7.      I have never been involved in litigation before, and trying to find U.S. counsel from China was difficult and time-consuming. In early July, I was approached by lawyers who specialize in these types of cases for China-based internet stores, but those firms push stores like mine to settle rather than litigate. I did not understand why my Store should have to settle when I believed

I operated as a business that had done nothing wrong and was not even selling "Hoola Hoops" by that time.

8.    I was unable to find satisfactory U.S. counsel until later in July, even though the retention was not finalized as I could only afford consultation fees. The first time I received a copy of the Complaint was on July 8, 2021, when I understand that U.S. counsel obtained a copy from the internet. It was also on July 8 that I first learned that a default judgment had been entered against the Store. Until then, I did not know where in the United States I was being sued, what claims were being made against the Store or who was suing the Store. When I learned on July 8 what Plaintiffs were claiming, I was stunned that I was accused of being part of a counterfeiting operation, working with other counterfeiters. I am not part of a counterfeiting operation. I am not working with the other defendants to counterfeit. I have an honest, small business in China, and it is not in the business of counterfeiting.

9.    I received one order for "Hoola Hoops" and it was not shipped directly from the Store. Instead, fulfillment is by Amazon, so I ship products to an Amazon warehouse, and Amazon does the shipping to the customer. I checked the Store's records and can confirm that no order was ever shipped to Illinois.

10.    Because of Plaintiff's lawsuit, I cannot make use of the Operating Capital, which is a significant asset. I understand that in this case, Plaintiff put up a $10,000 security bond. The "Hoola Hoops" product is not the only product sold on the Store; the Store sells dozens of other products. All of the revenue being earned is currently inaccessible, but the Store is still incurring operating costs. That is why this case and the restraint on the Operating Capital is such a hardship to the Store.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief and was signed by me on the date below.

Respectfully submitted this 29th day of July 2021.

/s/*Huang Tao*
Defendant

# EXHIBIT A

Hello from Amazon,

We are writing to inform you that we removed some of your listings and your disbursements from your seller account have been placed on hold. We took this action in accordance with a Temporary Restraining Order issued by a federal court. Items that infringe another party's copyright, patent, trademark, design right, database right, or other intellectual property or other proprietary right are prohibited. For more information on this policy, search on "Prohibited Content" in seller Help.

To resolve this dispute, we suggest that you contact the rights owner directly:

 Contact info:
Wham-O Holding, Ltd. et al.
c/o Keith A. Vogt
Intellectual Property Law
111 W. Jackson Blvd., Ste. 1700
Chicago, IL 60604
T: 312-675-6079
E: Attorney@vogtip.com

If you resolve this matter with the rights owner, please advise them to contact us to withdraw their complaint.

Please be advised that we are not in a position to provide any further information regarding this action, nor to address any messages directed to us in appeal. We may not respond to further emails about this issue.

Failure to comply with our policies may result in the removal of your Amazon.com selling privileges.

We appreciate your cooperation.

Thank you,
Amazon

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 29th day of July 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the parties.


                                               /s/*Huang Tao*
                                             Defendant